UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL KELLIHER, an individual,            No. 8:11-cv-01593-VMC-EAJ

         Plaintiff,

vs.

TARGET NATIONAL BANK, a national
bank and BONDED COLLECTION
CORPORATION, a foreign corporation,

         Defendants.
_____/

**DEFENDANT TARGET NATIONAL BANK'S MOTION TO
DISMISS PLAINTIFF'S VERIFIED COMPLAINT AND INCORPORATED
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

COMES NOW Defendant Target National Bank ("Target"), by and through undersigned counsel, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and Rule 3.01, Local Rules for the Middle District of Florida, and files its Motion to Dismiss Plaintiff's Verified Complaint and Incorporated Memorandum of Law in Support Thereof. Target respectfully requests that the Court dismiss Plaintiff, Daniel Kelliher's ("Plaintiff"), Verified Complaint ("Complaint")(Dkt.2) for failure to state a claim upon which relief can be granted. In support of the relief sought, Target states:

     1.     Federal law, 15 U.S.C. § 1637(b), requires that Target send monthly billing statements, and a state law cannot prohibit or penalize compliance with that requirement.

2. The Fair Debt Collection Practices Act imposes no requirement that Target notify any debt collector that the Plaintiff was represented by an attorney.

3. Counts Three and Four of Plaintiff's Complaint are not addressed to Target.

WHEREFORE, Defendant, Target National Bank, respectfully asks that this Court dismiss Plaintiff's Verified Complaint for failure to state a claim for which relief can be granted against Target.

## **MEMORANDUM OF LAW**

### Issues

1. Federal law requires that Target send monthly billing statements. The complaint alleges that Target's sending monthly billing statements violated the Florida Consumer Collection Practices Act. Can a state law prohibit or penalize compliance with a federal requirement?

2. The Fair Debt Collection Practices Act requires that "debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims" so that the consumer can tell the debt collector directly about information that the first-party creditor may already know. The Florida Consumer Collection Practices Act provides that "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Does the Florida law impose an implied requirement that Target notify a debt collector that the Plaintiff was represented by an attorney?

### Facts

On a motion for dismissal under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, the Court "must assume the truth of the material facts as alleged in the complaint."[1] But the Court need not accept "conclusions

---

[1] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)).

of law"[2] or "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts,"[3] even when pleaded as factual allegations. And a court on a motion for dismissal need not "ignore facts set forth in the complaint that undermine the plaintiff's claims."[4]

A court must likewise disregard "[u]nsupported conclusions of law or of mixed fact and law"[5] — even when pleaded as factual allegations. Such allegations "will not prevent dismissal":[6] "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."[7] And a court "need not resolve unclear questions of law in favor of the plaintiff."[8]

The complaint sets forth its claims' factual basis in eleven key paragraphs:

16. On or about June 16, 2010, at approximately 1:20 p.m. ET, Defendant Target's representative "Laurel" called Plaintiff from telephone number 866-248-0758 in an attempt to collect the Debt. Plaintiff advised Laurel of Undersigned Counsel's representation with regard to the Debt, provided Undersigned Counsel's contact information and asked that all further Debt

---

[2] *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

[3] *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *accord Berry v. Coleman*, 172 Fed. App'x 929, 932 (11th Cir. 2006).

[4] *Richardson v. DSW, Inc.*, 2005 WL 2978755, at *2 (N.D. Ill. Nov. 3, 2005) (citing *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992)); .

[5] *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

[6] *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

[7] *Jackson v. BellSouth Telecomms.*, 372 F.3d at 1263.

[8] *Kansa Reins. Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

17. collection communications be directed to Undersigned Counsel's office.
17. On or about July 13, 2010, despite having actual knowledge of Undersigned Counsel's representation regarding the Debt, Defendant Target mailed Plaintiff a billing statement in an attempt to collect the Debt. Please see attached a true and correct copy of the billing statement labeled exhibit "A1–A2."
18. The July 13, 2010 billing statement contained language stating Defendant Target has "a number of special payment arrangements" and advised Plaintiff to call Defendant Target at 800-621-2410 to discuss payment arrangements.
19. On or about August 13, 2010, despite having actual knowledge of Undersigned Counsel's representation regarding the Debt, Defendant Target mailed Plaintiff another billing statement in an attempt to collect the Debt. Please see attached a true and correct copy of the billing statement labeled exhibit "B1–B2."
20. The August 13, 2010 billing statement from Defendant Target advised Plaintiff his account was "seriously past due" and to contact Defendant Target "today" at 800-621-2410.
21. Despite having actual knowledge of Undersigned Counsel's representation of Plaintiff with regard to the Debt, on or before September 10, 2010, Defendant Target retained third-party debt collector, BCC, to collect the Debt directly from the Plaintiff.
22. Defendant Target's hiring of Defendant BCC was an indirect attempt to collect the Debt directly from Plaintiff.
23. Defendant Target failed to notify Defendant BCC of Undersigned Counsel's representation of Plaintiff with regard to the Debt.
24. On or about September 10, 2010, Defendant Target indirectly through Defendant BCC mailed Plaintiff a debt collection letter in an attempt to collect the Debt from Plaintiff. Please see attached a true and. correct copy of the third collection letter labeled exhibit "C."
25. On or about September 13, 2010, despite having actual knowledge of Undersigned Counsel's representation regarding the Debt, Defendant Target mailed Plaintiff a billing statement in attempt to collect the Debt. Please see attached a true and correct copy of the billing statement labeled exhibit "D1–D2.''
26. The September 13, 2010 billing statement advised Plaintiff that his account was "seriously past due" and to contact Defendant Target "today" at 800-621-2410 to make payment arrangements.[9]

## Legal Standard

Rule 12, Federal Rules of Civil Procedure, provides in relevant part that:

---

[9] Compl. [Dkt. 2], ¶¶ 16–26.

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted . . . . A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.[10]

To survive a motion for dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] A plaintiff's claim has facial plausibility when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] When a plaintiff has not "nudged [his] claims across the line from conceivable to plausible," then dismissal is mandatory.[13]

## Argument

Counts One and Two of Plaintiff's Complaint allege that Target violated the Florida Consumer Collection Practices Act by communicating with the Plaintiff after learning that he was represented by an attorney — directly communicating with the Plaintiff by mailing monthly billing statements to him, and indirectly communicating with him through a debt collector. Counts Three and Four of Plaintiff's Complaint are not addressed to Target.

---

[10] Fed. R. Civ. P. 12(b)(6) (how to present defenses).

[11] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Twombly*, 550 U.S. at 555–56.

[12] *Iqbal*, 129 S. Ct. at 1949.

[13] *Twombly*, 550 U.S. at 570.

### I.  Federal law requires that Target send monthly billing statements, and a state law cannot prohibit or penalize compliance with that requirement.

Count One of Plaintiff's Complaint claims that:

32. The Defendant Target is subject to, and have [*sic*] violated the provisions of, Florida Statute § 559.72(18) by intentionally and repeatedly communicating with the Plaintiff, after being given actual notice that Plaintiff was represented by counsel with regard to the underlying Debt.
33. Specifically, despite having actual knowledge of Undersigned Counsel's representation of Plaintiff with regard to the Debt, Defendant Target continued to send statements containing debt collection language in an attempt to collect the Debt.[14]

Count Two of Plaintiff's Complaint likewise claims that:

37. The Defendant Target are subject to, and have violated the provisions of, Florida Statute § 559.72(9) by asserting the existence of a legal right with the Plaintiff, knowing such right does not exist.
38. Specifically, Defendant Target directly and indirectly attempted to collect the Debt from·Plaintiff after already having knowledge of Undersigned Counsel's representation and that they no longer had a right to contact Plaintiff regarding the Debt. This is a right implicitly asserted by Target when Target knows that such a right does not exist.[15]

But while the Plaintiff is claiming that Target's billing statements violated the Florida Consumer Collection Practices Act, a federal law — the Truth in Lending Act — required that Target send those very statements:

(b) **Statement required with each billing cycle**
The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . . .[16]

---

[14]Compl. [Dkt. 2], ¶¶ 32–33.

[15]*Id.*, ¶¶ 37–38.

[16]15 U.S.C. § 1637(b) (statement required with each billing cycle).

7

The federal statute enumerates, in detailed provisions that run 1,493 words, a dozen specific items that each periodic billing statement must include.

The Complaint acknowledges that the communications by which Target allegedly violated the Florida Consumer Collection Practices Act are "billing statements,"[17] and that these "billing statements" were sent monthly in July, August, and September 2010, always on the same day each month.[18] The billing statements, which are exhibited to the Complaint,[19] contain the information that the Truth in Lending Act requires for the "statement required with each billing cycle."[20] Target was sending the monthly billing statements in order to comply with federal law.

Another federal court addressed this same issue just last year in *Marcotte v. General Electric Capital Services, Inc.*[21] The plaintiff consumer's attorney sent the defendant creditor "a letter . . . telling defendants that the firm represented Plaintiff and to send all future communications to the firm."[22] But the creditor later mailed two billing statements to the consumer, who sued the creditor under the California Rosenthal Fair Debt Collection

---

[17] *See, e.g.*, Compl. ¶ 17 ("Defendant Target mailed Plaintiff a billing statement in an attempt to collect the Debt"); *id.*, ¶ 19 ("Defendant Target mailed Plaintiff another billing statement in an attempt to collect the Debt"); *id.*, ¶ 25 ("Defendant Target mailed Plaintiff a billing statement in an attempt to collect the Debt").

[18] *See id.*, ¶ 18 ("The July 13, 2010 billing statement"); *id.*, ¶ 20 ("The August 13, 2010 billing statement"); *id.*, ¶ 26 ("The September 13, 2010 billing statement").

[19] *See id.*, Exs. A1 (7/13/10), B1 (8/13/10), and D1 (9/13/10) to Plaintiff's Complaint.

[20] *See* 15 U.S.C. § 1637(b) (statement required with each billing cycle).

[21] 709 F. Supp. 2d 994 (S.D. Cal. 2010).

[22] 709 F. Supp. 2d at 996.

Practices Act, which incorporates (and extends to first-party creditors[23]) the provision in the Fair Debt Collection Practices Act under which "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt."

The United States District Court for the Southern District of California granted the creditor's motion for judgment on the pleadings, and dismissed the complaint. The *Marcotte* court held that "compliance with Plaintiff's interpretation of [California law] and federal regulations is a physical impossibility. Obviously, Defendants cannot send billing statements to Plaintiff as required by TILA and Regulation Z, and also refrain from sending them under [California statute]."[24] The court explicitly rejected Mr. Marcotte's argument that the creditor "could send the statements to Plaintiff's lawyer" and thereby "could comply with TILA and Regulation Z's requirement to send billing statements and with [California statute]'s purported prohibition," because the Truth in Lending Act and its implementing regulation "require[] that a creditor send statements to the 'consumer'" and "define[] a consumer as a 'natural person,'" so "billing statements must be sent to natural persons . . . and not to organizations, like Plaintiff's law firm."[25] The court also held that "requiring credit-card companies to send statements to law firms would violate Regulation Z in other respects."[26]

---

[23]*Id.* at 998 ("the CFDCPA defines debt collectors to include both third-party debt collectors and credit-card companies collecting on their own behalf, like Defendants").

[24]*Id.* at 1000.

[25]*Id.*

[26]*Id.* at 1001.

The Florida statute that Plaintiff accuses Target of violating here is substantively identical to the California statute that the *Marcotte* court held was preempted when it came to a creditor mailing monthly billing statements to a consumer. The Florida statute, like the California statute, applies both to third-party debt collectors and to first-party creditors, and provides that "[i]n collecting consumer debts, no person shall . . . [c]ommunicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."[27]

This Court should therefore follow the *Marcotte* court and hold that Florida law cannot penalize Target for complying with a requirement of federal law by mailing a monthly billing statement to Plaintiff.

## II. The applicable law imposes no requirement that Target notify any debt collector that the Plaintiff was represented by an attorney.

Count One of Plaintiff's Complaint also complains that:

> 34. Further, despite having knowledge of Undersigned Counsel's representation of Plaintiff with regard to the Debt, Defendant Target continued to indirectly collect the Debt by turning the Debt over to Defendant BCC for further Debt collection directly from Plaintiff.[28]

The Plaintiff is evidently arguing that Target, having learned that he was represented by an attorney, owed a duty to communicate that information to a debt collector who would be collecting on the debt, with a view toward preventing the debt collector from communicating

---

[27] Fla. Stat. § 559.72(18).

[28] Compl. [Dkt. 2], ¶ 34.

with Plaintiff. But no such duty appears in the statute, and several cases that have considered related issues have come to the opposite conclusion.

The Florida Consumer Collection Practices Act provides, in the section creating a civil remedy for its violation, that "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."[29] The federal courts that have considered whether a first-party creditor must tell a debt collector that a consumer is represented by an attorney, or has asked that communication cease, have generally held that no such duty exists.

Plaintiff claims that the defendant debt collector, Bonded Collection Corporation ("Bonded"), violated both federal and state law, while the creditor, Target, violated only Florida law by not telling Bonded that Plaintiff was represented by an attorney. Another federal court rejected a similar argument in *Melvin v. Credit Collections, Inc.*,[30] where the United States District Court for the Western District of Oklahoma rejected a plaintiff's claim that a creditor's failure to tell its debt collector "that plaintiffs had expressly asked [the creditor] to refrain from contacting plaintiffs at work or by telephone in connection with efforts to collect the debt" violated the Oklahoma Consumer Protection Act,[31] even though

---

[29]Fla. Stat. § 559.77(5) (civil remedies).

[30]2001 WL 34047943 (W.D. Okla. Apr. 5, 2001).

[31]*Id.* at *3 ("Plaintiffs allege that [creditor] Lakeside's failure to communicate their request constitutes an unfair trade practice which is actionable under the OCPA. . . . Here, plaintiffs attempt to bring within the scope of the OCPA an alleged omission of Lakeside when it communicated with a third party, [debt collector] CCI, in an effort to collect the debt.").

11

that failure allegedly caused the debt collector to violate the Fair Debt Collection Practices Act.[32] More recently, the United States District Court for the Northern District of California considered facts almost identical to this case in *Offril v. J.C. Penney Co.*,[33] where

> the complaint alleges that plaintiff's counsel, Berg, notified JC Penney [the creditor] in writing that he represented plaintiff and that all further communications in connection with the plaintiff's debt should be directed to his office. In addition, the complaint alleges that JC Penney subsequently transferred collection of plaintiff's debt to Nationwide, and that Nationwide thereafter contacted plaintiff directly with a collection letter.[34]

The *Offril* court granted Nationwide's motion for dismissal.[35]

Likewise, in *Micare v. Foster & Garbus*,[36] the United States District Court for the Northern District of New York held that "in order to prevail on a claim pursuant to [15 U.S.C.] § 1692c(c), a plaintiff must establish that he notified the defendant debt collector in writing that he refused to pay or that communications should cease," and that prior written notice to the creditor was insufficient.[37] And both the Federal Trade Commission and courts around the nation have held that a creditor's knowledge that a consumer is represented by an attorney is not imputed to a debt collector to whom the creditor assigns the debt for

---

[32]*Id.* at *1 ("Plaintiffs' claims are based on [debt collector] CCI's conduct in its collection efforts, which it claims violate both the federal Fair Debt Collection Practices Act . . . and the OCPA. Plaintiffs' claims against [creditor] Lakeside are limited to the OCPA . . . .").

[33]2009 WL 69344 (N.D. Cal. Jan. 9, 2009).

[34]*Id.* at *3.

[35]*Id.* at *4.

[36]132 F. Supp. 2d 77 (N.D.N.Y. 2001).

[37]132 F. Supp. 2d at 81.

collection.[38] The United States Court of Appeals for the Seventh Circuit explained in *Randolph v. IMBS, Inc.*, that the Fair Debt Collection Practices Act's statutory scheme requires that "debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims" precisely so that the consumer can tell the debt collector directly about information that the first-party creditor may already know.[39]

The statutory scheme therefore does not assume that a first-party creditor owes a duty to communicate to a debt collector any information about the consumer being represented by an attorney. The applicable law imposes no implied requirement that Target notify any debt collector that the Plaintiff was represented by an attorney. The failure to give such notice does not violate the law.

**III.    Counts Three and Four of Plaintiff's Complaint are not addressed to Target.**

The complaint's final two counts are not addressed to Target. Count Four cannot state a claim against Target in any case because, as a first-party creditor collecting its own debt in its own name, Target is not subject to the Fair Debt Collection Practices Act.

Count Three alleges in paragraph 40 that "[t]he Defendant is subject to, and has violated provisions of, Florida Statute § 559.72(9) by attempting to collect the Debt with

---

[38] *See* FTC Official Staff Commentary, 53 Fed. Reg. 50,097 at 50,104 (Dec. 13, 1988) ("The creditor's knowledge that the consumer has an attorney is not automatically imputed to the debt collector."), *quoted in Hubbard v. Nat'l Bond & Collection Assocs., Inc.*, 126 B.R. 422, 427 (D. Del. 1991); *Schmitt v. FMA Alliance*, 398 F.3d 995, 997–98 (8th Cir. 2005) (rejecting argument that "[s]ince [creditor] possessed actual knowledge of [consumer]'s representation prior to transferring collection of the debt to [debt collector]," creditor's knowledge should be imputed to debt collector); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729–30 (7th Cir. 2004); *Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1011 (N.D. Cal. 2006), *rev'd in part on other grounds*, 584 F.3d 1147 (9th Cir. 2009); *Burger v. Risk Mgmt. Alternatives, Inc.*, 94 F. Supp. 2d 291, 293 (N.D.N.Y. 2000).

[39] *Randolph*, 368 F.3d at 729.

knowledge that the Debt is not legitimate or asserting the existence of the legal right to the Debt with the knowledge that the right does not exist."[40] But while paragraph 40 does not identify "the Defendant" to which it refers, paragraph 41 is explicit that "Defendant BCC" is the "defendant" to which Count Three refers.

Count Four refers explicitly to Bonded (or, in the complaint, "BCC").[41] And since Count Four purports to state a claim under the Fair Debt Collection Practices Act, Count Four cannot state a claim against Target. The Fair Debt Collection Practices Act contains numerous requirements and prohibitions, which apply only to debt collectors.[42] More to the point, civil liability under the Act covers only "any *debt collector* who fails to comply," and does not extend to anyone who is not a "debt collector."[43] Target, as a creditor collecting its own debts in its own name, is not a debt collector within the Act's meaning:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, debts *owed or due or asserted to be owed or due to another*. . . . The term does not include—

---

[40] Compl. [Dkt. 2], ¶ 40.

[41] *Id.*, ¶¶ 43–44.

[42] For example, the Act provides that "a *debt collector* may not communicate with a consumer in connection with the collection of any debt" except under certain restrictions. 15 U.S.C. § 1692c(a) (communications in connection with debt collection) (emphasis added). "A *debt collector* may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." 15 U.S.C. § 1692d (harassment or abuse) (emphasis added). "A *debt collector* may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (false or misleading representations) (emphasis added). "A *debt collector* may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f (unfair practices) (emphasis added).

[43] 15 U.S.C. § 1692k(a) (civil liability) (emphasis added).

    (A)  any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor . . . .[44]

Creditors "are not covered by the Act,"[45] since they "generally are restrained by the desire to protect their good will when collecting past due accounts."[46]

## Conclusion

Federal law requires that Target send monthly billing statements, and a state law cannot prohibit or penalize compliance with that requirement. The applicable law imposes no requirement that Target notify any debt collector that the Plaintiff was represented by an attorney. Counts Three and Four are not addressed to Target.

---

[44] 15 U.S.C. § 1692a(6) (emphasis added).

[45] *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *accord Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("The distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all."); Robert J. Hobbs, *Fair Debt Collection* § 3.1 at 61 (5th ed. 2004) ("The FDCPA . . . generally excludes creditors collecting their own debts."); *id.*, § 4.2.4 at 77 ("Creditors are generally exempt from FDCPA coverage."); *see also United States v. ACB Sales & Serv., Inc.*, 590 F. Supp. 561, 576 (D. Ariz. 1984) (rejecting argument "that the FDCPA unfairly discriminates against independent debt collectors" because others "such as the actual creditor or his lawyer, are not regulated by the Act").

[46] S. Rep. No. 95-382, at 2 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, *quoted in Schlosser*, 323 F.3d at 536.

15

Therefore, Target respectfully asks that this Court dismiss the complaint for failure to state a claim against Target.

        Respectfully submitted

/s/ Sherilee J. Williams
Sherilee J. Williams (FBN 17499)
Hill, Ward & Henderson, P.A.
P.O. Box 2231
Tampa, FL 33601-2231
Phone: 813-221-3900
Fax:    813-221-2900
E-mail: sjwilliams@hwhlaw.com
        in association with

FAEGRE & BENSON LLP
Brian Melendez, No. 223633 (Minn.)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: 612.766.7309
Fax:    612.766.1600
E-mail:  bmelendez@faegre.com

Attorneys for Defendant
   Target National Bank

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Ian R. Leavengood at ileavengood@leavenlaw.com; Heather M. Fleming at hfleming@leavenlaw.com (attorneys for Plaintiff); and John Ryan at jryan@hinshawlaw.com (attorneys for co-Defendant Bonded).

/s/ Sherilee J. Williams
Sherilee J. Williams (FBN 17499)