**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DANIEL KELLIHER,
an individual,

                                                              Case No.:

      Plaintiff,

v.

TARGET NATIONAL BANK,
a national bank
and BONDED COLLECTION CORPORATION,
a foreign corporation,

      Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AND SUPPORTING MEMORANDUM**

      Plaintiff, Daniel Kelliher (hereinafter, "Mr. Kelliher"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 3.01(b), hereby files this Response in Opposition to Target National Bank's (hereinafter, "Target") Motion to Dismiss, and in support thereof respectfully states the following:

**I.     INTRODUCTION**

      This case arises from Target attempting to collect a debt after Target knew Kelliher was represented by counsel with regard to the debt.  As explained below, Mr. Kelliher's Complaint states a cause of action for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, "FCCPA") because Target, willfully, knowingly and intentionally attempted to collect the debt directly from Mr. Kelliher through the use of a three periodic statements, despite having actual notice that Mr. Kelliher was represented by counsel with regard his consumer credit card account ending in -1339 (hereinafter, the "Debt").  In addition, Target turned the Debt

1

over to Bonded Collection Corporation (hereinafter, "BCC") with instructions to continue to collect the Debt directly from Kelliher's despite having actual notice that Mr. Kelliher was represented by counsel with regard to the Debt.  This was an indirect attempt by Target to collect the Debt from Kelliher.  Florida law recognizes that creditors are within the purview of the FCCPA and can be held liable if they are found to have attempted to collect a consumer debt from the debtor if it, directly or indirectly, attempts to collect the Debt directly from the represented consumer.  Target's Motion to Dismiss, therefore, should be denied.

### A.     Factual Background

Plaintiff is a Florida resident who at all times relevant to this action lived in Pinellas County, Florida.  Pl.'s Verified Complaint at ¶ 4.  Target is a national bank that regularly extends consumer credit to consumers in Pinellas County, Florida.  *Id.* at ¶ 5. Kelliher hired legal counsel for representation regarding the Debt on or about February 26, 2010.  *Id.* at ¶ 14.  Kelliher advised Target of representation of legal counsel on or about June 16, 2010 and provided legal counsel's contact information.  *Id.* at ¶ 16. Notwithstanding the same, Target attempted to collect the Debt from Kelliher using periodic billing statements.  *Id.* at ¶¶ 17-20; 25-26; Exhibits A1-A2, B1-B2, and D1-D2. Additionally, Target turned the Debt over to BCC for further Debt collection directly from Kelliher.

Target's periodic statements go beyond required truth-in-lending disclosures and willfully, knowingly and intentionally attempt to collect the Debt from Kelliher. Specifically, each periodic billing statement advises Kelliher that he has a "past due amount." *Id.* at ¶¶ 17, 19, 25.  Furthermore, Target requests Kelliher to contact

Target about his past due account, advises that his account is "seriously" past due, informs Kelliher that it has a number of special payment arrangements available to him and threatens that if Kelliher does not set up payment arrangements, Target will charge off the debt, thereby blemishing Kelliher's credit. *Id.* This can be avoided, however, if Kelliher contacts Target "right away" and sets up payment arrangements. *Id.* Finally, Target's use of BCC to indirectly attempt to collect the Debt directly from Kelliher despite Target possessing actual knowledge of Kelliher's representation by counsel with regard to the Debt is prohibited by the FCCPA. *Id.* at 16, 21, 24.

### B.   Procedural Background

On or about June 15, 2011, Plaintiff filed his original Verified Complaint in the Circuit Court in and for the Sixth Judicial Circuit, alleging three state law causes of action for violations of the FCCPA and one federal causes of action for violations of the FDCPA against co-defendant, Bonded Collection Corporation (hereinafter, "BCC").

In response, on or about July 15, 2011, Target filed a Notice of Filing Notice of Removal in the Circuit Court, seeking removal of the action to this Court pursuant to 28 U.S.C. §§ 1441, and filed a Notice of Removal in this Court. BCC consented to the removal. *See* Notice of Removal at ¶ 12, Exhibit L. On or about July 22, 2011, Target filed its Motion to Dismiss, seeking dismissal of the Verified Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state of cause of action upon which relief can be granted.

Target has moved to dismiss Counts I and II, generally asserting that (1) 15 U.S.C. § 1637(b) preempts the FCCPA and requires that the periodic statements in question be sent to Kelliher, and (2) Target is allowed to indirectly collect the Debt

directly from Kelliher using BCC despite Target possessing actual knowledge of Kelliher's representation by legal counsel with regard to the Debt.

Dismissal is not appropriate in this case. Kelliher's Verified Complaint sufficiently pleads facts to support his claims, including specific factual assertions related to Target's use of debt collection language that goes well beyond the disclosures required to protect consumers under TILA and Regulation Z. Target uses its periodic statements to collect the Debt from Kelliher despite knowing that he was represented by counsel with regard to the Debt. The FCCPA is not preempted by TILA and Regulation Z to the extent that both consumer protection statutes can be read together and each given meaning, and in the event that there is any conflict, TILA and Regulation Z preempt the FCCPA only to the extent of such conflict. TILA, Regulation Z and the FCCPA can be read together to both provide Kelliher with the credit disclosures intended to protect him while at the same time stopping impermissible, stressful debt collection communications from Target.

Furthermore, Target is not permitted to turn the Debt over to a third-party debt collector for further debt collection directly from Kelliher when Target knows that Kelliher is represented by counsel with regard to the Debt. Such conduct is an indirect attempt to collect the Debt from Kelliher and is expressly prohibited by the plain meaning of a debt collection "communication" as defined by the FCCPA. Target's turnover of the Debt to BCC is an attempt to "run-around" the FCCPA's prohibition of Target being permitted to directly collect the Debt from Kelliher, a consumer known by Target to be represented by counsel with regard to the Debt. As such, Target's Motion to Dismiss should be denied.

4

## II.   <u>LEGAL STANDARD OF REVIEW</u>

To survive a motion to dismiss, a plaintiff must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *Iqbal*, 129 S.Ct. at 1949.  Dismissal is appropriate only if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.  The purpose of the complaint is to apprise the defendant of "what the claim is and the grounds upon which it rests." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (internal quotation omitted).  A plaintiff need only do what is necessary to satisfy what the Eleventh Circuit called a "liberal pleading standard." *Id.*

"When considering a motion to dismiss [under Rule 12(b)(6)], the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted." *Holtzman v. B/E Aerospace, Inc.*, 2008 WL 214715, at *1 (S.D.Fla. Jan. 24, 2008).  The court's examination is limited to the four corners of the complaint. *Keating v. City of Miami* , 598 F.3d 753, 761 (11th Cir. 2010); *Homes By Deramo, Inc. v. Mid-Continent Cas. Co.*, 661 F. Supp. 2d 1281, 1288 (M.D. Fla. 2009); *Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F.Supp.2d 1287 (S.D.Fla. 2000); *see also Toyota Tsusho Am., Inc. v. NSC Alliance LLC*, 2010 WL 556316, * 4 (S.D. Fla. Feb. 22, 2010) (arguments that rely on matters outside of the pleading are impermissible on a Motion to Dismiss under Rule 12(b)(6)); *Seoul Broad.*

*Sys. Int'l, Inc.*, 2010 WL 2035137, *2 (M.D. Fla. May 21, 2010) ("When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

### III.   KELLIHER STATES A CLAIM AGAINST TARGET FOR WHICH RELIEF CAN BE GRANTED UNDER THE FCCPA

Kelliher alleges in his Verified Complaint that Target violated the FCCPA when it sent Kelliher three periodic statements after Target received actual notice of Kelliher's representation by counsel with regard to the Debt.   Florida Statutes, Section 559.72 specifically provides:

> "In *collecting* consumer debts, no person shall…
> (18) *[c]ommunicate with a debtor* if the person *knows* that
> the debtor is represented by an attorney with respect to such
> debt and has knowledge of, or can readily ascertain, such
> attorney's name and address…."

Fla. Stat. § 559.72(18) (2011) (emphasis added).

Unlike federal debt collection laws, the FCCPA has been interpreted to apply to both lenders and third party debt collectors, and thus applies to Target in this case. *See Craig v. Park Fin. of Broward County, Inc.*, 390 F. Supp. 2d 1150, 1154 (M.D. Fla. 2005) (finding use of the word "person" in the FCCPA means the Florida statute applies to both consumer collection agencies and original creditors and thus provides greater protection to consumers than the federal law, the Fair Debt Collections Practices Act);

*Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

Target denies violating the FCCPA claiming, that as a lender of consumer credit, it was bound by federal fair billing and disclosure laws, specifically TILA and Regulation Z, to send periodic statements to Kelliher, regardless of whether it knew of Kelliher's representation by counsel with regard to the Debt. In essence, Target is claiming that TILA and Regulation Z wholly preempt the FCCPA and require Target to send Kelliher periodic statements, regardless of their content. TILA and Regulation Z, however, were not expressly intended to preempt state consumer protection laws like the FCCPA. Specifically, they were not intended to wholly occupy the field and regulate consumer debt collection, they do not directly conflict with the FCCPA's prohibition against creditors attempting to collect a consumer debt from a debtor known to be represented by counsel, and to the extent there is such conflict, if any, TILA and Regulation Z would preempt the FCCPA only *to the extent* of such conflict. To the extent TILA and Regulation Z did not conflict with the FCCPA, this Court should attempt to harmonize the statutes, read them together and offer Kelliher the most consumer protections available under both statutes.

### A.     TILA and Regulation Z Do Not Preempt the FCCPA

TILA and Regulation Z do not preempt the FCCPA because Congress did not intend TILA and Regulation Z to wholly occupy the field and preempt other broader, more protective state consumer protection and debt collection laws. To the contrary, Congress intended TILA and Regulation Z to protect consumers through disclosure of important information regarding open-ended lending transactions. Target's arguments that TILA and Regulation Z require it to send periodic statements that contain language

that goes beyond the required disclosures and attempts to collect the Debt from Kelliher, a consumer known to be represented by counsel with regard to the Debt, takes legislation that intended as a shield to protect consumers from certain dangers associated with consumer debt, and purportedly gives Target a sword to cut through the FCCPA's protections, allowing it to selfishly communicate with Kelliher while he is receiving counsel for his financial hardship.

The federal preemption doctrine is based on the Supremacy Clause of the United States Constitution. *U.S. Const. art. VI, cl. 2.* A court's preemption analysis begins with an initial determination of whether the activity covered by the federal statute is also covered by state statute or regulation. If the federal statute and state statute cover the same activity, the next determination is if, and to what extent, Congress intended to preempt the state law. *FL Lime v. Paul, 373 U.S. 132 (1963); Cliff v. Payco General American Credits, Inc.,* 363 F. 3d 1113(11th Cir 2004) (citing *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn,* 375 U.S. 96, 103 (1963) ("the purpose of Congress is the ultimate touchstone" of preemption analysis). There is a long-upheld presumption that Congress does not intend to preempt state law. *Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187, 1195 (2009) (applying the presumption to include implied conflict preemption); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S. Ct. 1788, 1801 (2005) ("[W]e assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.' " (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, (1995) (other internal quotations omitted)).

Federal preemption may occur expressly or impliedly and traditionally exists in three flavors. *Cliff v. Payco, 363 F. 3d 1113, 1122* (11th Cir 2004). Express preemption is found where Congress states its explicit intention to preempt state law within the language of the federal law. *Id.* The Supreme Court has also identified two types of implied preemption, field and conflict preemption. *Id.* (citing *Wisc. Public Intervenor v. Mortier*, 501 U.S. 597, 604-05 (1991) (citations omitted). "Field preemption" occurs where express preemption does not exist, but where the language and purpose of a federal law is so comprehensive that further regulation by the states cannot exist. *Id.* (citing *English v. General Electric Company*, 496 U.S. 72, 79 (1990)). Finally, "conflict preemption" occurs where it is impossible to comply with both federal and state law or where compliance with state law would frustrate or inhibit the Congress' objectives under the federal law. *Id.* at 1122 (citing Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73 (2000)).

TILA is contained in Title I of the Consumer Credit Protection Act, as amended, 15 U.S.C. 1601 et seq, and is implemented by the Federal Reserve Board through Regulation Z, which has the force of federal law. 12 C.F.R. § 226.1(a). Through TILA and Regulation Z, Congress requires credit card companies to provide certain *disclosures* to consumers. 15 U.S.C. § 1637(b); 12 C.F.R § 226.7. Section 1637(b) of the Truth in Lending Act provides:

> (b) Statement required with each billing cycle. The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items…"

15 U.S.C. § 1637(b).  Subsection (b) goes on to generally enumerate the specific items that TILA requires be *disclosed*, namely: (1)  the outstanding balance; (2) the amount and date of each extension of credit and a brief identification of each extension sufficient enough to enable the obligor to identify the transaction; (3) the total amount credited to the account during the period; (4) the amount of any finance charge; (5) where more than one periodic interest rate may be used to compute the finance charge, each such rate; (6) the total finance charge expressed as an annual percentage rate; (7) the balance on which the finance charge was computed; (8) the outstanding balance in the account at the end of the period; (9) the date by which payment must be made to avoid additional finance charges; (10) the address to be used by the creditor for the purpose of receiving billing inquiries from the obligor; (11) a "minimum payment warning" advising obligors of the interest that will be paid by making only the minimum payment; and (12) requirements relating to late payments.  *Id.*

Similarly, Section 226.7 of Regulation Z provides,

> "Periodic statement. The creditor shall furnish the consumer with a periodic statement that *discloses* the following items, to the extent applicable… (a) Previous balance… (b) Identification of transaction… (c) Credits; (d) Periodic rates… (e) Balance on which finance charge computed;…(f) Amount of finance charge… (g) Annual percentage rate… (h) other charges… (i) Closing date of billing cycle;  new balance… (j) Free-ride period… [and] (k) Address for notice of billing errors..."

12 C.F.R § 226.7. (emphasis added).

TILA and Regulation Z require certain disclosures be included in the lenders' periodic statements that are sent to obligors, and nothing more.  Congress did not intend for TILA to limit the states' ability to regulate debt collection (e.g., the FCCPA) and did

not require Target to include the language in its periodic statements that go *beyond required disclosure* and attempt to collect the Debt from Kelliher.  In sum, TILA and Regulation Z neither expressly nor impliedly preempt the FCCPA.  We analyze each further below.

### 1. Congress Did Not Expressly Preempt or Intend the TILA and Regulation Z to Occupy the Field

TILA was enacted by Congress to "assure a meaningful *disclosure* of credit terms…to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (emphasis added).  The purpose of Regulation Z "is to promote the *informed* use of consumer credit by *requiring disclosures* about its terms and cost." 12 C.F.R. § 226.1(b) (effective April 1, 2011) (emphasis added).  As specifically enumerated above, the Act and the Regulation provide detailed provisions and standards for making *disclosures* to consumers.  15 U.S.C. § 1637(b), 12 CFR § 226.7(b).

Congress has attempted to eliminate the problem of interpreting its intent regarding preemption of TILA and Regulation Z by specifically providing for the extent of both federal laws' preemption over state law. Specifically, TILA provides:

> "Effect on other laws …
>
> (a)   Inconsistent provisions; procedures applicable for determination.
>
> (1) Except as provided in subsection (e), chapters 1, 2, and 3 [*15 USCS §§ 1601* et seq., *1631* et seq., and *1661* et seq.] ***do not annul, alter, or affect the laws of any State*** relating to the disclosure of information in connection with credit transactions, ***except to the extent that those laws are inconsistent with the provisions of this title*** [*15 USCS §§ 1601* et seq.], **and then only to the extent of the inconsistency.**"

15 U. S. C. § 1610(a) (emphasis added).

Similarly, Regulation Z provides:

> (1): Except as provided in paragraph (d) of this section, state law requirements that are inconsistent with the requirements contained in . . . the act and the implementing provisions of this regulation are ***preempted to the extent of the inconsistency***.
>
> A State law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law. A State law is contradictory if it requires the use of the same term to represent a different amount or a different meaning than the Federal law, or if it requires the use of a term different from that required in the Federal law to describe the same item.
>
> (ii) State law requirements are inconsistent with the requirements contained in chapter 4 (Credit billing) of the Act (other than section 161 or 162) and the implementing provisions of this regulation and are preempted if the creditor cannot comply with State law without violating Federal law.

12 C.F.R. §§ 226.28(a), (2)(ii) (emphasis added).

Nowhere in TILA or Regulation Z does Congress state its intent to entirely preempt state consumer protection laws, or to replace state debt collection laws. By explicitly listing the isolated instances where TILA and Regulation Z preempt state law, Congress also indicated it did not intend to occupy the entire field of consumer credit legislation. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) (finding "consumer protection is a field traditionally regulated by the states"); *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034 (C.D. Cal 2008) (holding consumer claim under state UDAP law not preempted by TILA where consumer

was seeking additional remedies because additional penalties are not inconsistent with TILA but rather provide greater protection).

Therefore, TILA and Regulation Z do not expressly preempt the FCCPA in this case, as the remedies sought under the FCCPA offer Kelliher more, not less consumer protections, and the additional penalties sought, namely statutory damages, injunctive relief and reimbursement for attorneys' fees and costs, are not inconsistent with TILA.

> 2.   **The FCCPA Does Not Conflict with the TILA and Regulation Z;  To the Extent There is Any Conflict Between the FCCPA and TILA/Regulation Z, the Two Statutes May be Read Together;  The FCCPA is Preempted Only to the Extent of Such Conflict.**

The viability of Kelliher's claim against Target depends on whether Target is able to comply with the FCCPA without violating the federal disclosure requirements found in TILA and Regulation Z.   Target could easily comply with TILA and Regulation Z, providing the required consumer disclosures while stopping short of adding additional, non-TILA required language that unlawfully attempts to collect the Debt from Kelliher in violation of the FCCPA.

A cursory reading of each statute could lead one to believe that the FCCPA directly contradicts the requirements of TILA and Regulation Z in that the FCCPA requires creditors and debt collectors to cease all collection communication with a consumer who is represented by counsel with regard to the debt, while TILA and Regulation Z require creditors to send monthly periodic billing statements to their consumers, whether represented or not. If adhering to state law would cause a violation of a federal law, the state law must be preempted.  *FL Lime,* 373 U.S. 132.  If an interpretation of the FCCPA exists, however, that would permit simultaneous compliance

13

with both the FCCPA and the TILA and Regulation Z, a court must attempt to harmonize the statutes and avoid preemption. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 231 (Cal. App. 4th Dist. 2010), *review denied* (Aug. 18, 2010) ("State law should be construed, whenever possible, to be in harmony with federal law, so as to avoid having the state law invalidated by federal preemption.); *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034 (C.D. Cal 2008); *see also Spitzer v. Applied Card Sys.,* 894 N.E. 2d (N.Y. App. Div. 2008);

To comply with TILA and Regulation Z, lenders extending open-ended credit, like Target, are required to transmit periodic statements to their customers. *See* 15 U.S.C. § 1637(b), 12 CFR § 226.7(b). To comply with the FCCPA, lenders attempting to collect their debts in Florida, like Target, must refrain from engaging in one of the nineteen prohibited practices enacted to protect consumer debtors from abusive, fraudulent, and deceptive collection practices. Fla. Stat. § 559.72. The pertinent portion of the Florida statute in this case prohibits Target from *communicating* with Kelliher, a person known to be represented by an attorney, in an *attempt to collect consumer debts*. Fla. Stat. § 559.72 (18) (2011).

An initial, literal reading of the statutes' language calls into question Target's ability to simultaneously send Kelliher the periodic statements required under TILA and Regulation Z, while at the same time complying with the FCCPA's prohibition against communication with Kelliher. The possibility of a direct conflict, however, and thus preemption of this provision of the FCCPA, does not necessitate preemption if lenders can comply with both the federal and state laws. *See Cliff v. Payco*, 363 F.3d 1113, 1127

(11th Cir. 2004) (finding the possibility that the FCCPA might be preempted by the Higher Education Act does not require the court to conclude the state law is preempted).

Target relies on *Marcotte* to support the apparent position that lenders are permitted, if not required, to send periodic billing statements regardless of the statements' contents. This, however, is not the case. *Marcotte* is a California case with a fact pattern similar to the case at hand. *Marcotte v. General Electric Capital Services*, 709 F. Supp. 2d 994 (S.D. Cal. 2010). In *Marcotte*, a first party creditor sent periodic statements to a consumer known to be represented by counsel. *Id.* at 996. Similar to the FCCPA, the California debt collection law in *Marcotte* prohibits first-party creditors from communicating with consumers known to be represented by counsel with regard to a consumer debt. *Id.* at 997. The defendant sent periodic statements sent to the plaintiff despite knowing he was represented by counsel with regard to the debt. *Id.* at 996. The defendant claimed that it was required to do so and that TILA preempted the California debt collection statute. *Id.* at 997. In *Marcotte*, the District Court held that the periodic statements were required to be sent to the plaintiff under TILA and Regulation Z because such periodic statements were "carved out" of the prohibited communications under California law. *Id.* at 999. The *Marcotte* Court's decision heavily relied on the fact that California state law had expressly carved out periodic statements from prohibited debtor communications under the state law and allowed them to be sent to represented consumers despite the creditor having knowledge of representation of counsel with regard to the underlying debt. *Id.* at 999; 1001-1002. Kelliher's case can be easily distinguished from *Marcotte* in that (1) the FCCPA has no such carve out, and (2) the two statutes can easily be harmonized: disclose what is required under TILA and Regulation

Z but stop short of impermissible debt collection communications. Additionally, the periodic statements sent to Kelliher by Target insert language that goes beyond the disclosures required in periodic statements (e.g., state that an amount is 'past due,' etc.) that, as the *Marcotte* court suggests, could render the non-TILA required portion of the periodic statements to demand letters aimed at collecting the Debt. *Id.* at 1002.

It is possible for Target to send periodic statements containing all of the required TILA and Regulation Z disclosures to Kelliher while at the same time comply with the FCCPA's prohibition against communicating with Kelliher in an attempt to collect the Debt. For instance, Target could exactly follow TILA and Regulation Z mandate, disclosing the twelve enumerated items that are required under 15 U.S.C. § 1637(b) and 12 CFR § 226.7. To the extent that Kelliher or another represented consumer could construe one of TILA-required disclosures to be an attempt to collect the debt (e.g., the consumer reads the "outstanding balance" required under 15 U.S.C. § 1637(b)(1) to be a demand for payment), the FCCPA would admittedly be in conflict with TILA and Regulation Z and would therefore preempted, but only to the extent of that conflict. Said differently, the disclosure of the "outstanding balance" in a periodic statement would be required, regardless of how a least sophisticated consumer represented by counsel would interpret that TILA-required disclosure upon receipt of the periodic statement. The same could also be said for the other specifically listed and enumerated required disclosures under TILA and Regulation Z.

To the extent that Target, however, knowingly and willfully places language in its periodic statements that is not a specifically required disclosure under either TILA or

Regulation Z, it does so at its own peril, at least insofar as sending such periodic statements to Floridians knowingly represented by counsel is concerned.

In the instant case, Kelliher has not complained about any deficiencies in Target's required TILA and Regulation Z disclosures – they are sufficient and present in the periodic statements attached to his Verified Complaint.   Kelliher does complain, however, of Target's attempts to collect the Debt using said periodic statements despite Target having knowledge of representation by counsel regarding the Debt.   Specifically, Target tells Kelliher that it has been trying to bring Kelliher's *past due* account current for several months, has a number of payment arrangements available to Kelliher and asks Kelliher to contact it about making a payment.  Pl.'s Verified Compl. ¶¶ 17–18.  Target goes on to tell Kelliher that his account is *seriously past due* and asks him to contact Target to discuss *payment arrangements*, to *clear up his account* and to get his finances *back on track*.  Pl.'s Verified Compl. 19–20.  Finally, Target threatens charging off Kelliher's account and report it to the credit bureaus as bad debt if Kelliher does not contact Target to set up payment arrangements on his seriously past due account.  Pl.'s Verified Compl. ¶¶ 25–26.  The plain reading of these words—all words that are not required consumer protection disclosures under TILA or Regulation Z—is clear:  Target is attempting to collect the Debt from Kelliher.   Furthermore, Target's threat to negatively impact Kelliher's credit report unless payment arrangements are made is clearly an attempt by Target to impermissibly collect the Debt from Kelliher.  *See Sullivan v. Equifax, Inc.*, 2002 WL 799856 (E.D. Pa. 2002) (finding that reporting a debt to a credit bureau is a powerful tool designed, in part, to wrench compliance with payment terms); *Rivera v. Bank One*, 145 F.R.D. 614, 1993 WL 30681 (D. P.R. 1993).

In sum, the FCCPA—a state debt collection statute—does not conflict with TILA and Regulation Z.  The two statutes, both in the name of consumer protection, attempt to proscribe different lender conduct and can do so harmoniously, consistent with Congress' and the Florida Legislature's intent.  To the extent that this Court finds that there are circumstances wherein the FCCPA and TILA and Regulation Z do conflict, it should read the two statutes together, allowing TILA consumer protections to be disclosed while at the same time prohibiting Target from including in its period statement, language not required by TILA and Regulation Z that attempts to collect the Debt from Kelliher.

Kelliher has stated a cause of action for which relief can be granted in that Target had knowledge of Kelliher's representation of counsel and attempted to collect the Debt from Kelliher anyway, using a required TILA periodic statement as the messenger to carry extraneous, impermissible debt collection communications in violation of the FCCPA.  In this fact pattern, TILA and Regulation Z do not preempt the FCCPA.

> **B.    Target Cannot Attempt to Collect the Debt From Kelliher Using a Third Party Debt Collector if Target Knows that Kelliher is Represented by Counsel With Regard to the Debt**

Target's second argument in its Motion to Dismiss Kelliher's Verified Complaint—that Target has no obligation to notify any debt collector of the fact Kelliher was represented by counsel—misses the point and has no effect on Kelliher's claims. Target focuses its entire analysis its purported duty—or lack thereof—to disclose to a third-party debt collector that the Kelliher was represented by counsel with regard to the Debt.   Kelliher's allegations against Target, however, involve Target's *indirect* communication with Kelliher in an attempt to collect the Debt after Kelliher provided Target with actual notice of undersigned counsel's representation in violation of Florida

Statute Section 559.72(18). Pl. Verified Compl. [Dkt. 2], ¶¶ 21-35.   Kelliher did not

allege any such violation of 559.72(18) as to the debt collector in this case, and thus

whether Target provided the debt collector with notice of counsel's representation of

Kelliher is wholly irrelevant.

> The relevant part of Kelliher's Verified Complaint is clear:
>
> [D]espite having knowledge of Undersigned Counsel's representation of
> Plaintiff with regard to the Debt, Defendant Target continued to indirectly
> collect the Debt by turning the Debt over to Defendant BBC for further
> Debt collection directly from Plaintiff.

Pl. Verified Compl. ¶ 34.   As mentioned supra, Kelliher alleges such conduct violates

Florida Statute Section 559.72(18).   The FCCPA defines "communication" as "the

conveying of information regarding a debt directly *or indirectly* to any person *through*

*any medium*." Fla. Stat. § 559.55(5) (emphasis added).

Target's correctly notes in its Motion to Dismiss the emphasis courts should place

on federal courts' interpretation and application of the Fair Debt Collection Practices Act

(hereinafter, the "FDCPA") in construing the FCCPA's meaning and applying said law.

To that end, the FDCPA provides the same definition of "communication" as the

FCCPA.   15 U.S.C. § 1692a(2).  *See Heintz v. Jenkins*, 514 U.S. 291 (1995) (affirming

the plaintiff had a legitimate FDCPA claim against the defendant attorney who sent a

letter to Plaintiff's counsel and not directly to Plaintiff); *Ramirez v. Apex Fin. Mgmt.,*

*LLC*, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008) (noting Congress' intent for the

FDCPA to offer "a broad construction of its terms in favor of the consumer" and

emphasizing the significance of the use of the word "indirectly" in defining

"communication"); *Costa v. Nat'l Action Fin. Services*, 634 F. Supp. 2d 1069, 1076 (E.D.

Cal. 2007) (finding a message on the debtor's voicemail by a debt collector constituted an

*indirect* communication under the FDCPA even though no specific information about the related debt or the nature of the call was discussed); *Powers v. Professional Credit Servs.*, 107 F. Supp. 2d 166, 168 (N.D.N.Y 2000) ("[T]o allow a creditor to hire a debt collector after receiving actual knowledge that the consumer has retained legal representation for that debt and then withhold knowledge of this representation from the debt collector would blatantly circumvent the intent of the FDCPA.").

Kelliher alleges that Target *itself* continued to *indirectly* communicate with Kelliher in an attempt to collect the Debt after having notice of representation of counsel with regard to the Debt.  Pl. Verified Compl. ¶¶ 31–35.  Target used a debt collector, namely BCC, as the medium by which to send the Debt collection communication. Ver. Pl. Verified Compl. ¶¶ 31–35.  Regardless of whether BCC is Target's agent or independent contractor, the FCCPA proscribes Target's conduct, prohibiting it from setting into motion debt collection communications, whether they are delivered directly by Target to Kelliher's person or indirectly to Kelliher, using BCC as its means to collect the Debt.  Target did not challenge this allegation or the associated principle, but instead argued that it had no duty to disclose counsel's representation of Kelliher to BCC.  At least one federal court, however, disagrees with Target's position.  *See Powers v. Professional Credit Servs.,* 107 F. Supp 2d 166, 169 (holding that a creditor has a duty when turning over a file to his debt collector to convey all of the material facts regarding the claim).

Notwithstanding this ruling, Target's "duty" to disclose knowledge of Kelliher's representation by counsel with regard to the Debt when turning the Debt over to BCC is arguably immaterial.  If Target turns the Debt over to a debt collector for further

collection from directly from Kelliher, and the debt collector does in fact communicate with the represented debtor, it is Target's own conduct that runs afoul of the FCCPA. Target chose to *indirectly* communicate with Kelliher in an attempt to collect the Debt, using BCC as its medium, despite having knowledge of representation of counsel with regard to the Debt.   To allow, as Target seemingly suggests, first-party creditors to knowingly turn over debts to third-party debt collectors for further collection directly from the debtor would wholly undermine and completely subvert one of the clearly stated purposes of Florida Statute Section 559.72(18): prohibiting persons from sending debt collection communications to consumers when they know such consumer is represented by counsel with regard to the debt.

Target cites in support of its Motion to Dismiss four cases that are inapplicable to the case at hand.   Each case, both in their respective underlying facts and the legal theories that they stand for, can be easily distinguished from the facts of this case.  *Melvin v. Credit Collections, Inc.*, 2001 WL 34047943 (W.D. Okla. April 5, 2001), *Offril v. J.C.Penny Co.*, 2009 WL 69344 (N.D. Cal. Jan. 9, 2009), *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77 (N.D. N.Y. 2001), and *Randolph v. IMBS, Inc.,* 368 F. 3d 726 each stand for the theory that notice of representation of counsel with regard to a consumer debt, given to a first-party creditor, is not imputed to a third-party debt collector that is given the debt for further collection—the debt collector's actual knowledge of representation by counsel with regard to the debt must be both alleged and ultimately proven if a consumer is to prevail *against the debt collector*.  Kelliher has not complained of BCC communicating with him in violation of Florida Statute § 559.72(18) or 15 U.S.C. § 1692c(a)(2).   Kelliher's theories of recovery against BCC have absolutely

nothing to do with BCC's knowledge of representation of counsel with regard to the Debt.  If they did, BCC could affirmatively assert lack of knowledge of representation of counsel—and the inapplicability of imputed knowledge—as a defense.

## IV.    CONCLUSION

Kelliher has asserted a short, plain statement of facts that support a claim for which relief can be granted under the FCCPA.  Kelliher's Verified Complaint states a claim of relief that is plausible on its face, supported by facts, and thus it must survive Target's motion to dismiss.

Respectfully Submitted,

**LEAVENGOOD & NASH**


 /s/ Ian R. Leavengood
**Ian R. Leavengood, Esq., FBN 10167**
LEAD TRIAL COUNSEL
2958 First Avenue North
St. Petersburg, FL 33713
Phone:  (727) 327-3328
Fax: (727) 327-3305
ileavengood@leavenlaw.com
Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically by using the CM/ECF system to: **Sherilee J. Williams.**, (sjwilliams@hwhlaw.com), **Robert Sickles** (rsickles@hinshawlaw.com), and **Brian Melendez** (bmelendez@faegre.com) this 15th day of August 2011.


 /s/ Ian R. Leavengood
Attorney