UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL KELLIHER,

    Plaintiff,
v.                                Case No. 8:11-cv-1593-T-33EAJ

TARGET NATIONAL BANK,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Target National Bank's Motion to Dismiss Plaintiff's Verified Complaint (Doc. # 4), filed on July 22, 2011. Plaintiff filed a response in opposition to the Motion on August 14, 2011 (Doc. # 15). For the reasons that follow, the Court denies the Motion.

**I.   Background**

Plaintiff Daniel Kelliher retained counsel with regard to his debts on February 26, 2010. (Doc. # 2 at ¶ 14). His debts included an amount owed to Defendant Target National Bank on a consumer credit card account. (Id. at ¶ 8). On or about June 16, 2010, a representative of Target attempted to collect the debt, and Kelliher notified her that he was represented by counsel and that all further communications should be directed toward counsel. (Id. at ¶ 16). Despite having actual knowledge

that Kelliher was represented by counsel with regard to the debt, Target mailed monthly statements on or about July 13, August 13 and September 13, 2010, each of which contained language suggesting an attempt to collect the debt. (Id. at ¶¶ 17-20, 25-26).

On or before September 10, 2010, Target also retained a third-party debt collector, Bonded Collection Corporation, to collect the debt from Kelliher. (Id. at ¶ 21). Bonded mailed Kelliher a debt collection letter. (Id. at ¶ 24). Kelliher alleges that Target engaged Bonded in an indirect attempt to collect the debt. (Id. at ¶ 22).

On June 15, 2011, Kelliher filed a four-count complaint in state court against Target and Bonded (Doc. # 2). Counts One and Two of the Verified Complaint allege that Target's actions violated the Florida Consumer Collection Practices Act (FCCPA), specifically Fla. Stat. § 559.72(18) and 559.72(9). Counts Three and Four allege that Bonded violated Fla. Stat. § 559.72(9) and the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g.[1] Defendants removed the case to this Court on July 15, 2011 (Doc. # 1).

---

[1] On September 8, 2011, Kelliher filed a stipulation of dismissal without prejudice as to the claims against Bonded (Doc. # 18).

-2-

Target filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 22, 2011 (Doc. # 4). Target asserts that federal law requires it to send monthly billing statements, such as those sent to Kelliher, and that "state law cannot prohibit or penalize compliance with that requirement." (Id. at ¶ 1). Target further asserts that the applicable law does not require it to notify a debt collector such as Bonded that Kelliher is represented by counsel. (Id. at ¶ 2).

Kelliher filed a response in opposition to the Motion on August 15, 2011. (Doc. # 15). The Motion is ripe for this Court's review.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

-3-

>  the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). A plausible claim for relief must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[2] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134

---

[2] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent by such a motion."

(11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court may consider the various exhibits attached to the Verified Complaint without converting the Motion to Dismiss into one for summary judgment.

III. **Analysis**

Section 559.72 of the Florida Statutes prohibits certain consumer debt collection practices. In particular, Fla. Stat. § 559.72(18) makes it unlawful to

> [c]ommunicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

The FCCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(5).

Kelliher alleges that Target violated this provision of the FCCPA by incorporating debt collection language in its monthly statements and by engaging Bonded to collect the debt indirectly on its behalf. Target argues that it sent the statements pursuant to federal requirements and that no applicable law requires it to notify a debt collector that Kelliher is represented by counsel.

-5-

In addition, Fla. Stat. § 559.72(9) makes it unlawful to "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or asserts the existence of some other legal right when such person knows that the right does not exist." Kelliher argues that Target no longer had a right to contact him regarding the debt after having knowledge that he is represented by counsel.

The FCCPA provides that "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). There is one distinct difference between the two laws, however. Although the federal FDCPA does not apply to original creditors, the FCCPA has been interpreted to apply to original creditors as well as debt collection agencies. Craig v. Park Fin. of Broward County, Inc., 390 F. Supp. 2d 1150, 1154 (M.D. Fla. 2005). Thus, Target is subject to the FCCPA.

**A.    Debt Collection Language in Statements**

The federal Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, requires creditors "of any account under an open end consumer credit plan" to send a statement to the obligor "for each billing cycle at the end of which there is

-6-

an outstanding balance in that account or with respect to which a finance charge is imposed." 15 U.S.C. § 1637. TILA is implemented by the Federal Reserve Board through Regulation Z, which has the force of federal law. 12 C.F.R. § 226.1(a). Target contends that the monthly statements sent to Kelliher "contain the information that the Truth in Lending Act requires" and that they were sent "in order to comply with federal law." (Doc. # 4 at 8).

The statute sets forth twelve items that must be included in each statement to the extent possible: (1) the outstanding balance, (2) charges, (3) credits, (4) finance charges, (5) applicable percentage rates, (6) the total finance charge expressed as an annual percentage rate, (7) the balance on which the finance charge was computed and how that balance was determined, (8) the outstanding balance at the end of the period, (9) the grace period, (10) an address for billing inquiries, (11) a "Minimum Payment Warning" along with repayment information applicable if the consumer makes only the minimum monthly payments, and (12) late payment deadlines and penalties. 15 U.S.C. § 1637(b); see also Marcotte v. Gen. Elec. Capital Servs., Inc., 709 F. Supp. 2d 994, 1002 (S.D. Cal. 2010) (listing some of the items required).

Target argues that this Court should follow the Marcotte decision and not "penalize Target for complying with a requirement of federal law." (Doc. # 4 at 10). In Marcotte, the creditor sent the debtor monthly statements after receiving notice that the debtor was represented by counsel; the plaintiff argued that the statements violated California's Fair Debt Collection Practices Act. 709 F. Supp. 2d at 997. After analyzing the relationship between the state and federal statutes, the district court held that a creditor may send billing statements without violating state law. Id. at 999. Target contends that the Florida statute at issue here is "substantively identical to the California statute that the Marcotte court held was preempted when it came to a creditor mailing monthly billing statements to a consumer." (Doc. # 4 at 10).

However, the Marcotte court pointed out that the billing statements at issue in that case contained all of the information required by federal law "and nothing else that would change the billing statements into demand letters or efforts at debt collection." 709 F. Supp. 2d at 1002. The billing statements at issue in this case, in contrast, contain debt collection language.

In a section titled "Important Messages," the July 2010 statement Kelliher received states, "Please Contact Us About Your Past Due Account . . . We have a number of special payment arrangements, but we need to hear from you in order to try to help." (Doc. # 2 at 11). The August 2010 statement has stronger language: "Account Seriously Past Due . . . but we may still be able to offer special payment arrangements. . . . Your first step is to call us . . . ." (Id. at 13). The September 2010 statement is stronger still: "If we don't set up payment arrangements for your REDcard soon, we'll charge off your account and report it to the credit bureaus as bad debt. There's still time to work with us . . . ." (Id. at 17).

The Marcotte decision, and Target's arguments, are predicated on the proposition that billing statements are required by federal law. However, the federal statute expressly enumerates twelve items that must be included in a billing statement. Debt collection language, such as that included in Target's statements, is not among the enumerated items. Thus, Target could comply with federal law without potentially running afoul of the FCCPA by not including debt collection language.

In his response to the Motion, Kelliher further argues that TILA and Regulation Z do not preempt the FCCPA because

-9-

Congress did not intend for the law to "wholly occupy the field and preempt other broader, more protective state consumer protection and debt collection laws." (Doc. # 15 at 7). TILA provides that it does not "annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this title, and then only to the extent of the inconsistency." 15 U.S.C. § 1610(a).

Kelliher argues that TILA and the FCCPA are not in conflict. While TILA requires certain disclosures, the FCCPA prohibits communications that attempt to collect consumer debts. (Doc. # 15 at 10, 14). Creditors can comply with both laws by disclosing what is required under TILA and Regulation Z while stopping short of debt collection. (Id. at 15-16).

Kelliher also argues that Marcotte is distinguishable: California's consumer debt collection law includes a "carve-out" provision for periodic statements, and the FCCPA has no such carve out. (Id. at 15). Furthermore, as noted above, the Marcotte court suggests that language beyond that required by TILA could transform periodic statements into demand letters. (Id. at 16).

Kelliher alleges that Target sent statements containing debt collection language in an attempt to collect the debt despite having actual knowledge that Kelliher was represented by counsel. (Doc. # 2 at ¶¶ 21-22). Based upon the foregoing analysis, the Court finds that Kelliher has asserted a claim for relief sufficient to survive the Motion to Dismiss.

**B.  Indirect Debt Collection through Bonded**

Target construes Kelliher's Verified Complaint as arguing that Target had a duty to communicate to Bonded that Kelliher was represented by counsel. (Doc. # 4 at 10). Target argues that it owed no such duty, citing Melvin v. Credit Collections, Inc., 2001 WL 34047943 (W.D. Okla. Apr. 5, 2001).[3] Target also cites several cases for the proposition that "a creditor's knowledge that the consumer has an attorney is not automatically imputed to the debt collector" under the federal law. Micare v. Foster & Garbus, 132 F. Supp. 2d 77, 80 (N.D.N.Y. 2001);[4] see also Offril v. J.C. Penney Co., 2009 WL 69344 (N.D. Cal. Jan. 9, 2009); Randolph v. IMBS, Inc., 368

---

[3] Melvin involved the Oklahoma Consumer Protection Act, which contained "no reference to debt collection practices." 2001 WL 34047943 at *2.

[4] Although Target cites Micare in support of its argument, the Micare court found that knowledge of the debtor's representation could be imputed to the debt collector under certain circumstances. 132 F. Supp. 2d at 80.

-11-

F.3d 726 (7th Cir. 2004). These cases are distinguishable in that they involve suits against a debt collector not the original creditor.

In his response to the Motion, Kelliher asserts that his allegations "involve Target's *indirect* communication with Kelliher in an attempt to collect the Debt" -- not any purported duty to disclose to Bonded that Kelliher was represented by counsel. (Doc. # 15 at 18). The Verified Complaints alleges that Target used Bonded as the medium through which to send debt collection communications to Kelliher. (Doc. # 2 at ¶¶ 31-35). Kelliher argues that "[r]egardless of whether [Bonded] is Target's agent or independent contractor, the FCCPA proscribes Target's conduct, prohibiting it from setting into motion debt collection communications, whether they are delivered directly by Target to Kelliher's person or indirectly to Kelliher, using [Bonded] as its means to collect the Debt." (Doc. # 15 at 20).

For support, Kelliher cites Powers v. Professional Credit Services, Inc., 107 F. Supp. 2d 166 (N.D.N.Y. 2000). In Powers, the court held that "to allow a creditor to hire a debt collector after receiving actual knowledge that the consumer has retained legal representation for that debt and then withhold knowledge of this representation from the debt

-12-

collector would blatantly circumvent the intent of the FDCPA." Id. at 168. Furthermore, "[a] creditor has a duty when turning over a file to his debt collector to convey all of the material facts regarding the claim. . . . A creditor who has actual knowledge of such fact cannot retain a debt collector and withhold such information to contravene the FDCPA's intent." Id. at 169.

Although Powers involves a suit against a debt collector rather than an original creditor, the Court finds the analysis regarding original creditors to be instructive in this matter. Furthermore, the FDCPA includes the same definition of "communication" as the FCCPA -- "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The FDCPA has been described as "extraordinarily broad," and the protections provided by the FCCPA are "in addition to the requirements and regulations of the federal act." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1191 (11th Cir. 2010) (quoting Fla. Stat. § 559.552).

Kelliher alleges that Target retained Bonded to collect the debt and failed to notify Bonded that Kelliher was represented by counsel with regard to the debt. (Doc. # 2 at ¶¶ 21-22). Kelliher asserts that those actions constitute

-13-

indirect communication in violation of the FCCPA. Based upon the foregoing analysis, the Court finds that Kelliher has stated a claim for relief sufficient to survive the Motion to Dismiss.

IV. <u>Conclusion</u>

Accepting the allegations in the Verified Complaint as true and construing them in the light most favorable to Kelliher, the Court finds that Kelliher has stated a plausible claim for relief under the FCCPA. The Court therefore denies Target's Motion to Dismiss.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Defendant Target National Bank's Motion to Dismiss Plaintiff's Verified Complaint (Doc. # 4) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>23rd</u> day of November, 2011.

/s/ Virginia M. Hernandez Covington<br>
VIRGINIA M. HERNANDEZ COVINGTON<br>
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record